```
 1 │ DANIEL J. BRODERICK, Bar #89424
   │ Federal Defender
 2 │ JEFFREY L. STANIELS, Bar #91413
   │ Assistant Federal Defender
 3 │ 801 I Street, 3rd Floor
   │ Sacramento, California 95814
 4 │ Telephone: (916) 498-5700
 5 │
 6 │ Attorney for Defendant
   │ PETE ANDRE FLORES
 7 │
 8 │
 9 │              IN THE UNITED STATES DISTRICT COURT
10 │           FOR THE EASTERN DISTRICT OF CALIFORNIA
11 │
12 │
13 │ UNITED STATES OF AMERICA, ) No. 2:10-cr-00072-MCE
   │                           )
14 │             Plaintiff,    ) RESPONSE TO GOVERNMENT SENTENCING
   │                           ) MEMORANDUM; REQUEST FOR ORDER
15 │     v.                    ) SHORTENING TIME; ORDER
   │                           )
16 │ PETE ANDRE FLORES,        ) Date:  March 15, 2012
   │                           ) Time:  9:00 a.m.
17 │             Defendant.    ) Judge: Hon. Morrison C. England, Jr
   │                           )
18 │ _____  )
```

**A.   Request to File One Day Out of Time**

 The court is requested to permit this response to be filed one day late and consider it in connection with the sentencing of Mr. Flores. The tardy filing was caused by my failure to double check the deadline before scheduling a sentencing related meeting with my investigator for this morning instead of late afternoon yesterday.

///

///

///

**B.   Introduction**

The government supports its request for a 97 month sentence, CR 50 by arguing in support of the sentencing guidelines, by misconstruing the PSR recommendation as a "departure" rather than as a variance from the guidelines based on (overriding) statutory sentencing factors, and by an unsubstantiated invocation of the specter of the claimed correlation between pornography and hands-on abuse.

The court should reject the guidelines argument in favor of the presentence investigator's careful application of "3553" factors as supported in part by a national consensus that the guidelines are often unduly harsh, and also by information gathered by a federal defender's investigator's more in depth access to certain facts about Mr. Flores' history and characteristics set out below.

The court should reject the abstract argument that hands-on abuse is sufficiently correlated to possession of child pornography that it should make an individualized difference in the sentencing of Mr. Flores.

The court should impose a sentence not to exceed that recommended in the Presentence Report.  This request concedes that the recommendation of 60 months is "reasonable" in the sense that "reasonable" states the **appellate** standard of reviewing criminal sentences after *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005).

///

///

///

1  With respect to the statutory command directed to sentencing
2  courts, the court is requested to consider whether, in light of
3  Mr. Flores history and characteristics,  a somewhat lower
4  sentence of 48 months is also "sufficient" as well as "not
5  greater than necessary" to carry out the purposes of sentencing.

**B.   There is a national consensus that the sentencing guidelines for child pornography cases are generally overly harsh.**

The Ninth Circuit Court of Appeals, the United States Sentencing Commission, a survey of federal judges, and recent sentencing data across the nation all support the conclusion that the child pornography guidelines are unnecessarily harsh in most cases considered under those guidelines.

In *United States v. Henderson*, 649 F.3d 955 (9th Cir. 2011) the Court of Appeals noted that the child pornography guidelines almost totally reflects the imposition of Congressional mandates rather than the Sentencing Commission's "'exercise of its characteristic institutional role,' which requires that it base[] its determination on 'empirical data and national experience. . . .'" 649 F.3d at 926-63.

The *Henderson* court noted that it joined "several of our sister circuits" that have held likewise, that the Sentencing Commission itself has expressed concern with this guideline's history, and that sentencing courts have increasingly sentenced below the guidelines in a "comment on the perceived severity of the child pornography guidelines."  Id. at 962 (citing Sentencing Commission reports and assessments).

///

Stipulation/Order                 -3-

Judge Berzon, concurring, additionally suggested that district courts consider the guideline's "anomalous history" when applying it, noting that "an unduly deferential application of § 2G2.2 will lead to the vast majority of offenders being sentenced to near the maximum statutory term." Id., at 965. Accordingly, she wrote, the way in which the guideline concentrates even first offenders into high sentences "stands in significant tension with a sentencing judge's duties 'to consider every convicted person as an individual.'" Id., citing *Gall v. United States*, 552 U.S. 38, 52 (2007). Secondly, the guideline "often recommends longer sentences for those who receive or distribute images of minors than the applicable Guidelines recommend for those who actually engage in sexual conduct with minors." Id.

The Sentencing Commission noted a similar view in its 2009 report on the history of the Child Pornography guidelines (commenting that "if the base offense level were set any higher than 22, the typical offender sentenced under 2G2.2 for receipt of child pornography would face higher guidelines than a typical offender convicted of conspiracy to commit murder or kidnapping." U.S.S.C. "The History of The Child Pornography Guidelines," (October 2009) at 47,48.

The Sentencing Commission has recognized the judicial concern with § 2G2.2 and has repeatedly placed that guideline upon its list of policy priorities for review and amendment. See U.S.S.C., Notice of Final Priorities, 75 Fed. Reg. 54699 (July 2010); U.S.S.C., Notice of Final Priorities, 74 Fed. Reg. 46478 (June 2009); Henderson, at 960-61 (reviewing history of guideline).

Notably, in 2010, the Sentencing Commission conducted a survey of district court judges that revealed "widespread dissatisfaction with the extreme length of the Guideline-recommended sentences for possession-only defendants." *United States v. Apodaca*, 641 F.3d 1077, 1083, (9th Cir. 2011); U.S.S.C., Results of Survey of United States District Judges January 2010 through March 2010, available at http://www.ussc.gov/Judge_Survey/2010/JudgeSurvey_201006.pdf.

The Sentencing Commission's most recent sentencing data, U.S.S.C., Preliminary Quarterly Data Report, 2nd Quarter Release, Fiscal Year 2011, Through March 31, 2011, at Table 3 notes that 61.4 percent of child pornography defendants received sentences below the guideline range.  Excluding those defendants who received government-sponsored departures for substantial assistance, 57.3 percent of child pornography defendants received sentences below the guideline range.  The same data shows that in the six months from October 1, 2010 through March 31, 2011, 12 child pornography defendants received straight probation.  Id., Table 18.

This extremely high rate of below-guidelines sentencing has led Law Professor Douglas Berman, a nationally-recognized expert on federal sentencing law, to opine that "generally speaking, in a mine-run case, a below-guideline sentence rather than a within-guideline sentence complies with the 3553(a)(6) statutory instruction to sentencing judges to avoid unwarranted disparities."  Douglas A. Berman "Interesting New Federal Sentencing Data to Mine from USSC," June 1, 2011 available at http://sentencing.typepad.com/sentencing_law_and_policy/.

Stipulation/Order                  -5-

**C.  The Claim that Mr. Flores is at Risk to Commit Hands-on Offenses in the Future Is A Factually Unsupported Scare Tactic That Has No Proper Contribution to Make to Individualized Sentencing of Mr. Flores**

One telling comment about the lack of efficacy of the government's tactic is its own statement that **if it had any evidence** that Mr. Flores had engaged in hands-on abusive conduct they would have charged it.  They did not charge it because there is no such evidence.  The "Butner Study Redux" attached to the government's evidence does not provide it.  In fact the Ninth Circuit had this to say about the government's reliance on this very study:

> While the United States has relied upon the Bourke and Hernandez study [i.e. Bourke & Hernandez, The 'Butner Study' Redux...] to support its claims concerning the dangers posed by possession only child pornographers, it must be noted that one of the study's authors has criticized the government's characterization of his work, stating that "the argument that the majority of [child pornography] offenders are indeed contact sexual offenders and, therefore, dangerous predators . . . simply is not supported by the scientific evidence." Andres E. Hernandez, Psychological and Behavior Characteristics of Child Pornography Offenders in Treatment 4 (Apr. 2009) (unpublished manuscript), available at http://www.iprc.unc.edu/G8/Hernandez_position_paper_Global_Symposium.pdf.

*United States v. Apodaca*, 641 F.3d 1077, 1084 n.4 (9th Cir. 2011).

**D. Family Contacts By the Federal Defender Support and Strengthen The Probation Officer's Assessment of Mr. Flores' History and Characteristics as Supporting a Downward Variance.**

**1.  Mr. Flores' Efforts to Cope with Being Gay.**

Our interviews with family members substantially confirm Mr. Flores' statement to the Probation Officer, PSR ¶ 36, that the family did not know about his interest in pornography.  That was confirmed except for a sister, Monica, who did talk to him when he was in his mid-teens about gay pornography that she saw on his computer.

Stipulation/Order                -6-

In part, the family was probably in denial as his mother told a federal defender investigator that she found him in his room when he was in his mid-teens crying and moaning "Why am I the way I am?" This occurred during the phase when Pete was 13-15 when he was becoming aware of his sexual feelings and was trying to cope with the growing realization that he was gay. See e.g. ¶ 18, 56.

### 2.  Mr. Flores' Social Withdrawal and Isolation

It was also disclosed in interviews done by our investigator that Pete's social withdrawal and physical isolation was of much longer duration than described in paragraph 11 of the PSR. Whereas that paragraph suggests that his isolation was a response to the murder of a cousin when he was 20 or 21 ("approximately 2 years earlier" than his arrest), family members told us that the murder occurred when Pete was about 15 years old. They also told us that his social withdrawal and isolation actually dated back to the time when he started school, principally because Pete did not begin to talk until he was 3 years old, and could still not talk in sentences when he started kindergarten. In fact, it was the perception of the family that Pete's psychological development was stunted throughout his growing years so that he was psychologically significantly "younger" than his chronological age.

### 3.  Pattern of Being Bullied

Pete's description to the Probation Officer of being bullied from the 5th grade on (¶ 36) reflects a failure of memory on his part.

///

///

His sister Monica, who is five years older recalls that during the 3 years when both of them were at the same elementary elementary school, she saw people pushing him away and recalls having to protect him from more physical bullying by pulling kids off him.  His mother recalled observing the pushing away activity hen he was in kindergarten and first grade. The more physical bullying described by Monica commenced no later than the third grade and very likely earlier than that.

**4.   The "Middle Class Upbringing" and Family Emphasis on Education**

The family "gilded the lily" in describing the circumstances of Pete's upbringing.  The physical environment was much more dire than described in paragraph 36 of the PSR.  When the family first moved to Thornton, Pete had just finished kindergarten. Pete's father bought vacant land in Thornton and eventually constructed the house in which 3 generations of the family now live (the parents, two siblings their spouses and three children, and Andre.  For the first year, however, the family (then consisting only of the parents, Andre, and his siblings) lived in a rat-infested trailer with holes in the walls and floors, no bathroom, and no electricity.  In addition, there was no running water for the first two years.  Showers once a week were obtained by sneaking into the father's work site. Toilet facilities were indescribably primitive until an outhouse was constructed.  These primitive conditions were in full view of the elementary school that Pete attended and led to the perception that the family was extremely poor and contributed, along with Pete's language problems, to what became continual bullying and social ostracism.

The value placed on Pete's education by the parents was also overstated to the Probation Officer. His father was always working because he was the family's sole means of support, and most parenting tasks fell to his mother. Pete had to repeat kindergarten when they moved to Thornton, and he was placed in special classes from the very beginning. The mother reported speaking to his kindergarten teacher "maybe twice." Throughout his schooling the parents remained passive or indifferent to Pete's progress or needs. After Pete started attending different schools to which he was bussed, if he missed the bus, the mother would not take him to school at all except on those occasions when she succumbed to the badgering of Pete's sister, Monica, on his behalf.

**F.   Sentencing Request**

Upon review of the Presentence Report and the submissions of counsel, the court should reject the government's request for a 97 month sentence for this first offender.

Dated:   March 13, 2012          */s/ Jeffrey L. Staniels*
                                  Jeffrey L. Staniels
                                  Assistant Federal Defender
                                  Counsel for Defendant
                                  PETE ANDRE FLORES

1  DANIEL J. BRODERICK, Bar #89424
   Federal Defender
2  JEFFREY L. STANIELS, Bar #91413
   Assistant Federal Defender
3  801 I Street, 3rd Floor
   Sacramento, California 95814
4  Telephone: (916) 498-5700

6  Attorney for Defendant
   PETE ANDRE FLORES

9              IN THE UNITED STATES DISTRICT COURT

10             FOR THE EASTERN DISTRICT OF CALIFORNIA

13 UNITED STATES OF          ) No. 2:10-cr-00072-MCE
   AMERICA,                  )
14                           )
              Plaintiff,     )
15                           )
       v.                    ) ORDER SHORTENING TIME
16                           )
   PETE ANDRE FLORES,        ) Date:  March 15, 2012
17                           ) Time:  9:00 a.m.
              Defendant.     ) Judge: Hon. Morrison C. England, Jr
18                           )
   _____

20     The request of defense counsel to permit the attached
21 Response to the Government's Sentencing Memorandum to be Filed
22 one day out of time, is hereby **GRANTED**.
23     **IT IS SO ORDERED.**

25 Dated: March 14, 2012

              _____
              MORRISON C. ENGLAND, JR.
              UNITED STATES DISTRICT JUDGE

Stipulation/Order                    -10-